### JAMES MAY *vs.* CITY OF GLOUCESTER.

Essex. November 9, 1899. — November 29, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*City — Vote of Committee of Council — Evidence — Contract — Ratification.*

In an action against a city to recover a sum for keeping the plaintiff's horses in the defendant's engine house for use on a steam fire engine, a vote of the joint standing committee of the city council on the fire department, after the alleged hiring was ended, that the plaintiff's bill be allowed and paid, although it was reported to the aldermen and went no further, properly is admitted in evidence, as is also evidence that the chairman of the board directed the plaintiff to keep his horses as he did, and that the chief engineer gave similar orders under the chairman's directions; and, an ordinance of the city providing that no joint standing committee shall make any contract exceeding a certain sum without previous authority from the city council, the plaintiff can recover that sum, although his bill is much larger, and is not entitled to recover twice that sum because the letting was divided between two years and the members of the committee were not the same throughout.

CONTRACT, upon an account annexed, for keeping a pair of the plaintiff's horses in the defendant's engine house for use on a steam fire engine. At the trial in the Superior Court, before *Richardson*, J., the jury returned a verdict for the plaintiff; and both parties alleged exceptions. The facts appear in the opinion.

*C. A. Russell*, for the defendant.

*F. H. Tarr*, for the plaintiff.

HOLMES, C. J. This is an action of contract upon an account annexed to recover $402 for keeping a pair of the plaintiff's horses in an engine house of the defendant, from November 7, 1895, to March 23, 1896, for use on a steam fire engine. The defendant denies any authorized contract of hiring. By the Revised Ordinances of the city, c. 10, § 6, all incidental expenses of the department shall be under the direction of the joint standing committee of the city council on the fire department. By a joint rule of the city council for the years 1895 and 1896, joint standing committees are to keep records of their proceedings, no committee shall act by separate consultation, and no report shall be received unless the subject shall have been considered in committee actually assembled. Finally, by an ordinance of 1895, c. 9, § 7, no joint standing committee shall make any contract exceeding the sum of $100, or expend a sum exceeding said amount on any one piece of work from any appropriation which it has in charge, without previous authority from the city council. The only vote or record of the committee was a vote of June 10, 1896, after the alleged hiring, that the plaintiff's bill be allowed and paid. This was reported to the aldermen, but seems never to have got beyond their board. It was admitted in evidence, subject to exception. Testimony was admitted, also subject to exception, that the chairman of the board directed the plaintiff to keep his horses as he did, and that the chief engineer gave similar orders under the chairman's directions. The judge refused to direct a verdict for the defendant, put to the jury a question whether the committee of 1895 hired the horses, and instructed them that if they answered yes, as they did, they might give the plaintiff a verdict for such compensation as he fairly was entitled to, not exceeding $100. Both parties excepted, the plaintiff claiming the whole amount of his bill, at $3 a day, or at least $200.

To sustain the verdict under the instructions given by the judge the plaintiff must show a contract authorized by the joint standing committee, because that was the only ground on which the jury were allowed to find as they did, and it cannot be assumed that they would have found for the plaintiff on any other.

It may be questionable whether a vote was necessary to express the assent of the committee in this case, but it is true that if one was necessary in order to make a binding contract, there was none until the alleged hiring was at an end. But the jury reasonably might infer that when the horses were kept on hand, in open sight at the engine house, if the chairman of the committee and the engineer directed them to be kept there it was not without the knowledge of the committee, and that all that was wanting, to make a valid contract, if anything, was not a mutual understanding, but simply the formality of a vote. *McNeil* v. *Boston Chamber of Commerce*, 154 Mass. 277, 285, 286. If so, we do not see why the committee might not ratify the previous actual employment by giving it the only thing it needed, form, and so imparting to it whatever effect the employment would have had if it had been preceded instead of followed by the vote. See *Emerson* v. *Newbury*, 13 Pick. 377, 379; *McCormick* v. *Boston*, 120 Mass. 499.

If a committee not having authority to spend more than $100 should vote to hire horses at $3 a day, the fact that the use was allowed to run on for more than thirty-three days would not prevent the owner from recovering $100. For certain purposes, no doubt, the contract would be treated as one. If the use was continuous, the limit of authority could not be avoided by splitting up the time. So, on the other hand, when a mechanic is employed by the day, the employment is regarded as continuous for the purpose of saving his lien. *Batchelder* v. *Hutchinson*, 161 Mass. 462. *Savoy* v. *Dudley*, 168 Mass. 538. But the contract is not entire in a technical sense. It does not need argument to show that it was not a contract for one hundred and thirty-four days at the beginning, as either party might have stopped at will. It would be refining in the wrong direction to hold that the contract became entire at the moment when the use of the horses came to an end, so that after that moment it could be ratified and must be upheld as a whole or not at all. See *Brackett* v. *Morse*, 23 Vt. 554; *McLaughlin* v. *Hess*, 164 Penn. St. 570. We are of opinion that the judge was right in allowing the plaintiff to recover to the extent of $100, and in admitting the evidence which was admitted to make out the plaintiff's case. We are of opinion that he was equally right in not allowing the

plaintiff to recover $200, because the letting was divided between two years and so the members of the committee were not the same throughout. It is sufficiently plain that the committee were not authorized to make a bargain of this sort for more than $100. There was but one bargain and one ratification, and the ratification applied to the original dealing and regarded the whole transaction.          *Exceptions overruled.*